**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BESTHERB, INC., <br><br>                  Plaintiff, <br><br>     v. <br><br> YINLINK INTERNATIONAL INC. and EDISON YIN a/k/a PENGFEI YIN, <br><br>            Defendants. | Civil Action No. 22-06548 (GC) (JBD) <br><br> **OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Defendant Edison Yin's Motion to Dismiss Plaintiff Bestherb, Inc.'s Second Amended Complaint (SAC) (ECF No. 21) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).  (ECF No. 25.)  Plaintiff opposed (ECF No. 29), and Defendant replied (ECF No. 32).  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendant's Motion is **DENIED**.

## I.    BACKGROUND[1]

### A.    Factual Background

      Plaintiff Bestherb, Inc. is a California company that sells herbal extract products.  (ECF No. 21 ¶¶ 1, 8.)  Defendant Yinlink International Inc. is a New Jersey company that distributes

---

[1]      On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

"natural ingredients." (*Id.* ¶¶ 2, 9.)  Defendant Edison Yin is a New Jersey resident and the president and chief executive officer of Yinlink International.[2]  (*Id.* ¶¶ 3, 10.)

In 2021, Defendant Yinlink International placed four purchase orders for herbal extract products with Plaintiff in the total amount of $763,500.  (*Id.* ¶ 11.)  Plaintiff then shipped the products to Yinlink International.  (*Id.* ¶ 12.)  Yinlink International made one $50,000 payment in December 2021, but did not make any additional payments toward the outstanding balance of $713,500.  (*Id.* ¶¶ 13-14.)  Despite Plaintiff's multiple attempts to contact Yinlink International, it refused to pay the money owed.  (*Id.* ¶¶ 15-16.)

On June 29, 2022, Defendant Yin messaged Chao Xu, the president of Bestherb, via WeChat[3] that Yinlink International had encountered payment issues.  (*Id.* ¶ 17.)  Yin told Xu that to resolve these payment issues, Yinlink International's bank required Bestherb to make a payment to it "to demonstrate a normal and regular business relationship," after which Yinlink International's "bank could release the funds owed to [Bestherb]."  (*Id.*)  On July 8 and 14, 2022, Yin sent requests for payment to Plaintiff in an attempt to resolve the issue with his bank.  (*Id.* ¶ 18.)

On July 29, 2022, Xu contacted Yin to request payment of the outstanding balance.  (*Id.* ¶ 19.)  Yin told Xu that the bank contacted him again regarding the payment issues.  (*Id.*)  After again requesting that Bestherb make a payment to Yinlink International, Yin promised Xu that Yinlink International would return the payment.  (*Id.*)  During the beginning of August 2022, Yin sent two additional payment requests to Xu to resolve the issue with his bank and assured Xu that he would cancel and subsequently return the payment.  (*Id.* ¶ 20.)

---

[2]    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

[3]    WeChat is an "instant messaging application."  (ECF No. 21 ¶ 26.)  All communications between Yin and Xu were conducted via WeChat.  (*Id.*)

Xu, who "generally resided in China, and was not familiar with banking practices in the United States," relied on Yin's statement that Yinlink International's "bank required payment to demonstrate a normal and regular business relationship" and subsequently paid Yinlink International $34,500. (*Id.* ¶¶ 21-22.) Between August 12 and 18, 2022, Xu repeatedly asked Yin to return the payment. (*Id.* ¶ 24.) On August 12, 2022, Yin assured Xu that the bank would return the payment in two or three days. (*Id.*) On August 19, 2022, Yin informed Xu that the bank was processing the refund. (*Id.*) Between August 23 to 25, 2022, Yin repeatedly told Xu that the bank had issued the refund. (*Id.*)

As alleged in the SAC, Defendants Yinlink International and Yin never returned the $34,500 as promised. (*Id.* ¶ 25.) Additionally, "[f]or purposes of defrauding Plaintiff for more money, Yin intentionally made up a story about Defendant Yinlink's bank need[ing] to see payments [in order to] demonstrate a normal business relationship between the parties." (*Id.* ¶ 27.) Further, the SAC alleges that Yin "intentionally lied to Plaintiff that Defendant Yinlink would return the $34,000 after Plaintiff cancelled the purchase order," and "Plaintiff reasonably relied on Yin's misrepresentations and suffered damages." (*Id.* ¶¶ 28-29.)

### B.  Procedural Background

On November 9, 2022, Plaintiff filed the original Complaint against Defendants Yinlink International and Yin. (ECF No. 1.) On March 29, 2023, Plaintiff filed an Amended Complaint with the Court's permission. (ECF Nos. 7 & 9.) On June 23, 2023, Defendants moved to dismiss, in part, the Amended Complaint under Rules 12(b)(6) and 9(b). (ECF No. 12.) The Court granted in part and denied in part Defendants' motion. (ECF Nos. 19 & 20.) Specifically, the Court dismissed Plaintiff's common law fraud claim without prejudice. (ECF No. 20.)

Plaintiff subsequently filed the SAC reasserting the same claims, including the common law fraud claim. (ECF No. 21.) After receiving notice of a suggestion of bankruptcy, the Court

stayed this case as to Defendant Yinlink International pending resolution of its bankruptcy proceedings.  (ECF Nos. 23 & 24.)  Defendant Yin subsequently moved to again dismiss the common law fraud count as to Yin.  (ECF No. 25.)

## II.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

When claims sound in fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)."  *Burns v. Stratos*, Civ. No. 22-1319, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .").  This ordinarily requires "[a] plaintiff alleging fraud . . .

[to] support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); *accord Frederico*, 507 F.3d at 200 ("To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."). "Rule 9(b)'s 'normally rigorous particularity rule has been relaxed somewhat where the factual information is particularly within the defendant's knowledge or control.' But even if a relaxed application of Rule 9(b) were warranted . . . , [a plaintiff] would still need to allege facts demonstrating that his [or her] fraud claims are plausible." *Tripati v. Wexford Health Sources Inc.*, Civ. No. 22-1861, 2022 WL 17690156, at *2 n.3 (3d Cir. Dec. 15, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)); *In re Rockefeller Ctr. Properties*, 311 F.3d at 216 ("[C]ourts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud. . . .' Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed." (quoting *In re Burlington*, 114 F.3d at 1418)).

## III.    **DISCUSSION**

In New Jersey,[4] the five elements for common law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of

---

[4]    The parties brief the common-law claims under New Jersey law and do not dispute its application. Therefore, this Court sitting in diversity will apply New Jersey law to the claims for purposes of the present motion to dismiss. *See Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*, Civ. No. 23-22521, 2024 WL 3444273, at *5 n.9 (D.N.J. July 17, 2024).

its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Allstate New Jersey Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (N.J. 2015) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005)).  The particularity requirement of Rule 9(b) applies to fraud claims.  *See Harnish v. Widener Univ. Sch. of L.*, 931 F. Supp. 2d 641, 647 (D.N.J. 2013).

Yin argues that the common law fraud count of the SAC should be dismissed as to him "in its entirety because it fails to set forth a cognizable cause of action as against" him in "his individual capacity."  (ECF No. 25-1 at 8, 11.[5])  Specifically, Yin asserts that "Plaintiff's fraud claim against [him] should be dismissed because no basis exists for [his] personal liability."  (*Id.* at 11.)  In support of his position, Yin argues that he is not subject to personal liability unless it is appropriate to pierce the corporate veil or apply the participation theory of liability.  (*Id.* at 11-14; ECF No. 32 at 5-7.)  Yin asserts that Plaintiff has failed to plead facts in support of either theory of personal liability.  (ECF No. 25-1 at 11-14; ECF No. 32 at 5-7.)

### A.  Piercing the Corporate Veil

"Pursuant to the laws of New Jersey, it is axiomatic that 'a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise.'"  *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 424-25 (D.N.J. 2019) (quoting *State Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150 (N.J. 1983)).  Piercing the corporate veil is "an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form" and will only occur in "extraordinary circumstances, such as fraud or injustice[.]"  *Id.*  The party seeking to pierce the

---

[5]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

corporate veil bears the burden of proof. *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. Super. Ct. App. Div. 1996).

To pierce the corporate veil, two elements are required: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *State Cap. Title & Abstract Co. v. Pappas Bus. Servs.*, LLC, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (quotations and citations omitted). To ascertain whether the first element is satisfied, courts consider a variety of factors, including "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, [ ], siphoning of funds of the corporation by the dominant stockholder, non-function of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder." *Watson v. Sunrise Sr. Living Servs., Inc.*, Civ. No. 10-230, 2013 WL 103966, at *13 (D.N.J. Jan. 8, 2013). Regarding the second element, "courts . . . inquire as to whether the parent corporation via the corporate form, perpetrated a fraud, injustice, or the like." *Id.* (internal citations and quotations omitted).

Here, Plaintiff asserts that "[a]s Defendant Yin acknowledged, there are additional bases for personal liability against him, such as the piercing the corporate veil theory." (ECF No. 29 at 6 (citing *Shotmeye v. N.J. Realty Title Ins. Co.*, 948 A.2d 600 (N.J. 2008).) However, Plaintiff provides no additional arguments regarding a piercing of the corporate veil theory, nor does the SAC provide any allegations regarding the relevant factors necessary to pierce the corporate veil. (*See generally* ECF No. 21.) Therefore, the Court finds that Plaintiff has failed meet its burden of alleging sufficient facts to warrant a piercing of the corporate veil theory to proceed. *See United Cap. Funding Group, LLC v. Brick City Brewing, LLC*, Civ. No. 21-3314, 2021 WL 5150197, at *4 (D.N.J. Nov. 4, 2021) (finding that the "[p]laintiff has not established that piercing the corporate

veil is warranted," and "has not alleged any of the factors necessary for piercing the corporate veil,

let alone made the significant showing necessary to justify taking such a measure"); *see also Torus*

*U.S. Servs., Inc. v. Hybrid Ins. Agency, LLC*, Civ. No. 14-01630, 2015 WL 6445788, at *4 (D.N.J.

Oct. 22, 2015) (finding that the plaintiffs failed to allege sufficient facts to pierce the corporate

veil, which requires a significant showing).

### B.  Participation Theory of Liability

According to the New Jersey Supreme Court, "[t]he essence of the participation theory is

that a corporate officer can be held personally liable for a tort committed by the corporation when

he or she is sufficiently involved in the commission of the tort."  *Saltiel v. GSI Consultants, Inc.*,

788 F.2d 268, 278 (N.J. 2002).  The participation theory generally relates to "intentional torts"

such as "fraud and conversion."  *Id.* at 272.  Further,

> '[i]t is well settled by the great weight of authority in this country
> that the officers of a corporation are personally liable to one whose
> money or property has been misappropriated or converted by them
> to the uses of the corporation, although they derived no personal
> benefit therefrom and acted merely as agents of the corporation.  The
> underlying reason for this rule is that an officer should not be
> permitted to escape the consequences of his individual wrongdoing
> by saying that he acted on behalf of a corporation in which he was
> interested.'
>
> [*Id.* at 273.]

Importantly, the participation theory applies to torts, not breach of contract claims.  *United Cap.*

*Funding Group*, 2021 WL 5150197, at *4.

Yin argues that Plaintiff cannot rely on the participation theory of liability because this

action sounds in contract not tort.  (ECF No. 25-1 at 13-14; ECF No. 32 at 6.)  In support of his

argument, Yin cites to the New Jersey Supreme Court's decision in *Saltiel* and the New Jersey

Appellate Division's decision in *New Mea Construction Corporation v. Harper*, 497 A.2d 534

(N.J. Super. Ct. App. Div. 1985).  But both *Saltiel* and *New Mea Construction Corporation*

involved breach of contract and negligence claims, not a common law fraud claim like this matter. *See Saltiel*, 788 A.2d at 273 (noting that "[t]he conduct at issue in this appeal does not implicate intentional tortious conduct, but rather the individual defendants' allegedly negligent conduct in designing the specifications for [a] soccer field"); *New Mea Const. Corp.*, 497 A.2d at 539 (noting that the defendant homeowners in a contract action initiated by the builder of their home filed counterclaims against the builder alleging both breach of contract and negligence). Therefore, because this case concerns a common law fraud claim (*i.e.*, an intentional tort), the Court finds that the participation theory of liability applies.[6] *See Saltiel*, 788 A.2d at 272; *see also G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588 (D.N.J. 2014) (finding that the participation theory applied in a case involving breach of contract and fraud).

The Court finds that Plaintiff has pled sufficient facts with the requisite particularity as required under Rule 9(b) to assert a common law fraud claim against Yin, and therefore has corrected its pleading deficiency in the Amended Complaint. *See Bestherb, Inc. v. Yinlink Int'l Inc.*, Civ. No. 22-06548, 2024 WL 3898039, at *7 (D.N.J. Aug. 22, 2024) (finding that Plaintiff's complaint failed to "identify to whom the alleged misrepresentation was made or the circumstances of the misrepresentation," and finding that Plaintiff did not "identify who made [the] promise [to return the money], when it was made, or to whom it was made"). The United States Court of Appeals for the Third Circuit has underscored that "[i]n order to satisfy Rule 9(b), plaintiffs must

---

[6]    To the extent that Defendant asserts he is not liable under the participation theory because the contractual relationship was between Plaintiff and Yinlink International (*see* ECF No. 25-1 at 14), this argument lacks merit. *See Saltiel*, 788 A.2d at 273 (noting that an officer of a corporation can be held personally liable when money or property has been misappropriated or converted by him to the uses of the corporation); *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588 (D.N.J. 2014) (finding that the president of the company sued could be held liable for common law fraud for "making a material misrepresentation of fact concerning the" product sold).

plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 (3d Cir. 2015) (cleaned up).

Here, on June 29, 2022, Yin messaged Xu, the president of Bestherb, via WeChat that Yinlink International had encountered payment issues. (ECF No. 21 at ¶ 17.) To resolve these payment issues, Yin told Xu that Yinlink International's bank required Bestherb to make a payment to it "to demonstrate a normal and regular business relationship," after which Yinlink International's "bank would release the funds owed to [Bestherb]." (*Id.*) Throughout July and early August 2022, Yin requested payment from Xu on multiple occasions. (*Id.* ¶ 18.) After Yin made multiple requests for payment and provided assurances that the payment would be returned, Xu paid Yinlink International $34,500. (*Id.* ¶¶ 18-20.) Despite Yin's assertion that the bank processed the refund (*id.* ¶ 24), Plaintiff asserts that to date the $34,500 was never returned (*id.*). Accepting the factual allegations in the complaint as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has adequately pled facts in support of its common law fraud claim and has complied with the heightened pleading requirements in Rule 9(b). *See G & F Graphic Servs., Inc.*, 18 F. Supp. 3d at 588 (denying the defendant's motion to dismiss because the plaintiff pled facts sufficient to (1) show common law fraud, (2) satisfy the heightened pleading standard under Rule 9(b), and (3) show the participation theory applied).

Accordingly, the court denies Defendant's Motion to dismiss.

## IV.    **CONCLUSION**

For the reasons set forth above, and other good cause shown, Defendant Yin's Motion to Dismiss (ECF No. 25) is **DENIED**.  An appropriate Order follows.

Dated:  February 20 , 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE